*Sears*
*v.*
*Boston.*

---

## JOSIAH LITTLE *versus* EDMUND M. BLUNT.

The provision in the statute of limitations, that where the debtor at the time when the cause of action accrued, was out of the Commonwealth and did not *leave* attachable property therein, the statute shall not begin to run until his *return*, applies to persons who have never been within the Commonwealth, as well as to citizens who have been absent for a time.

This provision applies to a new promise made out of the Commonwealth; and it makes no difference, whether the new promise was made before or after the original promise has been barred by the statute.

In order to avoid this exception in the statute, the defendant is bound to show, that the creditor knew of his coming into the Commonwealth or having attachable property here, so as to have had an opportunity to arrest him, or make an attachment, or that his coming or having property was so public as to amount to constructive notice or knowledge, and to raise the presumption that if the creditor had used ordinary diligence the defendant might have been arrested or his property attached.

In an action by the indorsee against the maker of a note, the declaration, and the replication to a plea of the statute of limitations, alleged that the indorsement (which bore no date) was made on a certain day, but the evidence showed it to have been made on another day, but previous to the commencement of the action. *Held*, that the variance was immaterial.

Little
v.
Blunt.

ASSUMPSIT on three promissory notes made by the defendant, dated respectively August 29, 1807, September 12, 1807, and April 26, 1810, payable on demand to Thomas Somerby or order, and by him indorsed to the plaintiff. The writ was dated December 1, 1828. The declaration contained six counts; the first three of them averring that the notes were indorsed to the plaintiff on the days of their dates respectively, and the last three, averring that they were indorsed on December 20, 1822.

The defendant pleaded, 1. The general issue, and 2. The statute of limitations.

To the second plea the plaintiff filed two replications. The first alleged, that on July 10, 1810, Somerby was the holder of the notes at New York, to wit, at Boston ; that the defendant then and there promised Somerby to pay the notes; that Somerby on the same day indorsed the notes to the plaintiff ; and that always afterward, until within six years next before the date of the writ, the defendant was without the State, to wit, at New York, and left no property within the State, that could by common and ordinary process of law be attached. The second replication was similar, except that it alleged a new promise to Somerby on April 17, 1822, and an indorsement of the notes to the plaintiff on December 20, 1822.

By the agreement of counsel, the defendant rejoined double to the first replication, 1. That the defendant never promised ; 2. That the defendant returned within the Commonwealth after making the alleged new promise, and more than six years before action brought ; and 3. That the defendant, after making the new promise, and more than six years before action brought, had property in the Commonwealth which was attachable &c. The rejoinders to the second replication were similar, except that different days were alleged as to the time of the defendant's return and having property.

On a trial in 1833, the jury were not able to agree, and the case was afterwards submitted to the whole Court upon a statement of facts.

As to the new promise set forth in the first replication  t

was admitted that the defendant had, previously to July 10, 1810, removed with his family to New York and established himself in business there ; and that on that day he wrote a letter to Somerby promising to pay him the amount due to him.

The defendant contended, that inasmuch as neither of the notes were, at the date of the letter, barred by the statute, but were existing and available causes of action, no other and new cause of action accrued to the plaintiff, within the exception of the statute, by reason of the supposed promise contained in the letter.

He also contended, that the saving in the statute, (*St.* 1786, *c.* 52, § 4,) that " if any person against whom there shall be any cause of suit," at the time the same accrued, was without the limits of this Commonwealth, and did not leave property or estate therein that could by the common and ordinary process of law be attached, the person entitled to bring such action shall be at liberty to commence the same within the periods before limited in the statute, after such person's return into this government, — does not apply to a contract made in another State by a citizen of such other State.

Testimony was introduced on the part of the defendant, showing that he had visited Boston several times since 1810, for the purpose of vending his charts and nautical almanacs, (he being by profession an author and dealer in those works,) and on the part of the plaintiff, to show that he had no knowledge of the defendant's having thus been within the Commonwealth. The defendant contended, that the facts proved a return and property within the State, within the meaning of the statute, whether the plaintiff had knowledge thereof or not ; but the plaintiff insisted that it was a question of fact for the jury, to determine whether or not there had been want of due diligence on the part of Somerby or the plaintiff ; and the jury were so instructed.

If the Court should be of opinion, that neither of the replications could by law be sustained, or that the facts stated constitute a return or property within the State, within the meaning of the statute, judgment was to be rendered for the defendant ; otherwise the case was to stand for trial.

*Bartlett,* for the defendant, argued, as to the supposed new promise in 1810, that being made before the original cause of action was barred by the statute, it was not a new cause of action and did not come within the saving in the 4th section. The original cause of action remained, and the plaintiff had not two causes of action. The new promise merely rebutted the presumption of payment. *Little* v. *Blunt,* 9 Pick. 488 ; *Scales* v. *Jacob,* 3 Bingh. 639, 646 ; Angell on Limitations, 373 ; *Sacia* v. *De Graaf,* 1 Cowen, 356.

The provision in the 4th section respecting a *return* and *leaving property,* applies only to citizens of this State. The language of the statute of *Anne* differs materially. In the decision on this point in *Dwight* v. *Clark,* 7 Mass. R. 515, no authority is cited, and it is apprehended that the Court will consider the construction of the statute an open question.

To the point, that a public return of the defendant into the Commonwealth, having property with him, would enable him to avail himself of the statute, whether the fact were known to the plaintiff or not, he cited *Faw* v. *Roberdeau,* 3 Cranch, 174 ; *Fowler* v. *Hunt,* 10 Johns. R. 464 ; *Byrne* v. *Crown-inshield,* 1 Pick. 263.

*C. G. Loring* and *E. J. Loring,* for the plaintiff, cited to the point that the 4th section is applicable to citizens of another State, *Dwight* v. *Clark,* 7 Mass. R. 515 ; *Bulger* v. *Roche,* 11 Pick. 36 ; *Ruggles* v. *Keeler,* 3 Johns. R. 263.

*Per Curiam.* It was formerly determined, that a new promise made by the defendant in the State of New York, in 1822, there being no evidence of his return or leaving property within this Commonwealth, came within the saving in the 4th section of the statute. *Little* v. *Blunt,* 9 Pick. 488. This would be decisive in respect to the new promise in 1810, except for the distinction taken by the counsel for the defendant, between a new promise made before, and one made after, the original cause of action has been barred by the statute. But we think this distinction is immaterial. In one sense every new promise is a new cause of action ; as the statute operates upon it in the same manner as upon the original cause of action ; in another sense, it is not ; as the forms of pleading do not require the plaintiff to declare on it

as the cause of action. And if the plaintiff may declare on the old promise, and on the statute being pleaded, may reply the new one, we think it can make no difference whether the new one was before or after the six years had elapsed. In regard, therefore, to the new promise in 1810, we think the case comes within the 4th section of the statute.

The defendant objected, that at the time of the new promise made at New York in 1810, he had a domicil in New York, and so he is not embraced by the exception in the statute, the words " if any person, at the time the action against him accrued, was without the limits of the Commonwealth and did not leave property therein," and the words " after such person's return into this government," implying that he must be an inhabitant at the time of the promise. It would seem that the defendant comes within the exception, inasmuch as he was formerly an inhabitant of the Commonwealth. But we do not put the case upon this ground, for the point has been determined in *Dwight* v. *Clark*, 7 Mass. R. 515 ; where it was held, that this provision comprehends debtors who never have been inhabitants or residents in this State. And this decision is supported by cases in England, and New York.

It is said, that the defendant has frequently been within the Commonwealth, and having property with him, between 1810 and the commencement of this action, and that this is conclusive upon the plaintiff, whether he had or had not knowledge of these facts at the time. But such a construction would be adhering to the letter, against the spirit of the statute. The object of the saving, is, that the creditor shall have an opportunity of arresting the debtor or attaching his property ; and for this purpose he must know, or by reasonable diligence have the means of knowing, that the debtor is within the Commonwealth or has left property here subject to be attached ; otherwise the statute will not begin to run. This question of knowledge or reasonable diligence is to be determined by the jury.

On the new trial, before *Wilde* J., evidence was introduced, showing that the notes were indorsed to the plaintiff in 1822.

To support the issues as to the defendant's return into the Commonwealth, and with property, the defendant called witnesses, who testified, that from 1811 to 1822 the defendant was in the habit of coming to Boston to sell his charts and nautical books. The substance of their testimony is stated in the opinion of the Court.

On the part of the plaintiff, Gilman White, of Newburyport, deposed, that he had been a deputy sheriff ten years, that he had known the defendant thirty years, that the defendant resided in Newburyport till 1810, and then went to New York, that the deponent had no knowledge that the defendant had been in Newburyport or elsewhere within the Commonwealth since he ceased to reside in Newburyport, and that he had made inquiries for the defendant of many persons, not only because he had demands against him, but because he was asked to inquire for him by others, and particularly by Somerby.

Samuel Goodhue, of Newburyport, deposed, that he knew the defendant from 1801 to 1810, when the defendant removed to New York, that he married the defendant's sister, that he had a large demand against the defendant, and that he had no knowledge of his being in the Commonwealth, since he ceased to reside in Newburyport.

Philip Bagley, of Newburyport, a deputy sheriff, deposed, that the defendant gave him a note dated April 26, 1810, that he had never heard of the defendant's being in the Commonwealth since that day, that he had always been on the look-out and made inquiries for him, in order to collect his note.

The jury being unable to agree on a verdict, with the consent of the judge the case was referred to the whole Court, and judgment was to be entered according to their decision upon the law and the weight of the evidence.

C. G. Loring and E. J. Loring, for the plaintiff.

Bartlett, for the defendant, contended, that the replication setting forth an indorsement in July 1810, was not supported by proof of an indorsement on December 20, 1822. The time is material, for the defendant came to the trial prepared to prove notice to Little, of his return subsequently to July 1810, whereas it appears, that Somerby held the notes from

that time till December 1822, and during that period notice to Little would have been of no avail.

WILDE J. delivered the opinion of the Court. Since this case came last before us, on questions of law raised by the pleadings, two trials have been had on the merits, in each of which the jury were unable to agree upon a verdict. The case is now submitted, and is to be decided. by the agreement of the parties, according to the weight and legal effect of the evidence, as reported on the last trial.

Two questions only have been discussed.

1. The first is, whether there is any material variance between the facts proved, and the averments in the declaration.

2. Whether the evidence is sufficient to take the case out of the exception or saving clause in the statute of limitation, on which the plaintiff relies.

As to the first question, it is undoubtedly true that the plaintiff must prove his case as it is set out in the declaration. The *allegata* and *probata* must correspond. But there are some well-known exceptions to this rule. A party is not bound to prove matters which are merely surplusage, nor immaterial averments, and if the proof does not correspond with such matters and averments, the variance is not material. The objection in the present case is, that in the three first counts in the declaration the notes are averred to have been indorsed to the plaintiff on the days of their dates respectively, in the years 1807 and 1810, and the evidence proves the indorsements to have been actually made in the year 1822.

The general principle is, that in all torts and parol contracts, the day when the tort is alleged to have been committed, or the contract made, is not material ; and if the defendant makes it material by his plea, the plaintiff may reply another day, and it will be no departure ; and the same principle applies to a case where it becomes necessary to prove when the contract was made, and it does not agree with the time alleged in the declaration. If time however enters into the terms of a written contract, the true time must be stated. Gould on Pleading, *c.* 3, § 65, 66, 67, 71. Thus, if the date of a note of hand is alleged, the day of the date becomes material, for it enters into the description of the contract, and

Little
*v.*
Blunt.

so, if an indorsement of a note should be averred to bear date of a particular day, the time would be material for the same reason.

No such averment is made as to the notes now in suit, and we think therefore that the variance is immaterial.

In *Russel* v. *Langstaffe*, 2 Doug. 514, the notes sued were indorsed before the blanks in them were filled up, and the plaintiff recovered, although the allegation in the declaration, that the notes were indorsed after they were made, was disproved by the evidence. And in *Young* v. *Wright*, 1 Campb 139, it was averred in the declaration, that the indorsement of the bill of exchange was made before it became due, and it appeared in evidence to have been made after it became due, and Lord *Ellenborough* held that the variance was not material.

The defendant's counsel have argued, that the variance in this case has operated, or may be supposed to have operated, as a surprise, as they had a right, from the averment in the three first counts in the declaration, as to the time of the indorsement, to come prepared to prove that Little, before 1822, had notice of the defendant's return within the Commonwealth, and not that Somerby, the original promisee, had notice. No such surprise, however, can be presumed, as the true time of the indorsements was set out in the three last counts in the declaration.

But if there had been any surprise, the defendant would have been allowed time to procure further evidence, and this would be no valid objection to the form of the declaration, and the established rules of pleading and evidence, in similar cases.

The remaining question depends on the sufficiency and lega. effect of the evidence. The plaintiff, in his replication to the defendant's plea of the statute of limitations, alleges a new promise made by the defendant on the 10th day of July 1810, averring that he was then without the limits of the Commonwealth, and did not return until within six years before the commencement of the action, and during that time had no property or estate liable to attachment within the Commonwealth.

These averments are traversed in the rejoinder, and at the trial the question submitted to the jury was, whether the defendant had returned into the Commonwealth after making the new promise, more than six years before action brought, or had property here liable to attachment.   The evidence on the part of the defendant to prove his return, or coming to Boston on business, at sundry times, between the years 1810 and 1822, is satisfactory and uncontradicted, and indeed is not controverted or denied by the plaintiff's counsel.   Gedney King testified, that, from the year 1811 to 1822, the defendant was in the habit of coming to Boston to sell his charts and nautical books (he being by profession an author and dealer in those works, and the witness a purchaser) ; that during that period he was here as often as twice a year ; that he brought with him articles of merchandise as above stated ; and that the witness dealt with him at his store therefor ; that at each time he was seen by the witness for several days, and at one time he was here a week.   Melvin Lord also testified, that he had done business with the defendant in this city, and had purchased articles of him in October 1822, and had dealt with him prior to this for some years, and that he had been here as often as twice a year.   Mary S. Crombie also testified, that the defendant had frequently been in Boston since 1820, and had boarded in her father's family ; that he did not keep himself private, so far as she knew, but that she had no knowledge of his business, and could not say whether or not he went on 'Change or to the public offices, but that he came in and out of the house like other boarders.   This was substantially the evidence on the part of the defendant, and was all the evidence as to the defendant's return, except the deposition of J. Blunt, who testified to his father's (the defendant) being in Boston in 1822, and to some other circumstances not material.

That this evidence, disconnected with any other proof or circumstances, would be sufficient to maintain the issue for the defendant if the creditor had resided in Boston, we have no doubt.   There is no express proof of any concealment, and the only circumstance relied on by the plaintiff's counsel to raise a presumption of that fact is, that so few witnesses have

Little
v.
Blunt.

been found who have any knowledge or recollection of the defendant s frequent visits to this city. There is considerable weight in this circumstance, but unless fortified by other circumstances it would hardly justify the presumption that the defendant concealed himself with the intention of avoiding an arrest.

We are then to consider the evidence on the part of the plaintiff.

It appears that the defendant, a short time before his letter to the plaintiff of July 1810, left Newburyport, where he was settled in business and had long resided, deeply in debt, and much embarrassed in his pecuniary affairs. Goodhue testifies, that for some. time before, he had become insolvent ; and it does not appear that he has ever since been able to extricate himself from his embarrassments. Nor is it proved that he has ever since visited Newburyport, although he left two sisters there, and no doubt many other connexions and friends. The evidence proves conclusively, we think, that he has never appeared there openly since he left for New York. The depositions of White, Bagley and Goodhue, are strong to this point, and prove further, that the deponents had never been able to learn that the defendant had ever been within the limits of the Commonwealth after his leaving Newburyport in 1810 Goodhue testifies that his demand was large, and that he was very desirous to find the defendant in this State, in order to arrest him on his demand. His means of information in consequence of his connexion with the defendant, would undoubtedly facilitate the success of his inquiries. From these facts and circumstances and some others of less importance, we think the inference is very strong, that the defendant avoided visiting Newburyport for fear of arrest by some of his creditors there, and he had cogent inducements so to do. The same inducements would lead him to conceal, as much as possible, from the same creditors, his occasional journeys to Boston ; and this will account in some measure, for the deficiency of the defendant's evidence to prove that his visits of business in Boston were open and public and not clandestine.

To avoid the exception in the statute, the defendant is

bound to show either that the plaintiff or Somerby, whichever might hold these notes, either knew of his return, so as to have had an opportunity to arrest him, or that his return was so public as to amount to constructive notice or knowledge, and to raise the presumption that if the plaintiff or Somerby had used ordinary diligence the defendant might have been arrested.

Considering the whole evidence, we do not think it sufficient for this purpose.

There is no proof that Somerby had any actual knowledge of the defendant's visits to Boston, nor is there any circumstance shown from which it may be presumed ; nor is there any evidence of the want of due diligence on his part to acquire the necessary information.

Gilman White testifies, that he was requested by Somerby to make inquiries, and to be on the look-out for the defendant.    And both he and Bagley say that they did make inquiries repeatedly, and that their inquiries were ineffectual.

In respect to the defendant's property brought with him to Boston for sale, we think the evidence is still less favorable to the defendant, for the creditors could have had no means of discovering that he had property here, unless it could have been found in his possession.

On both grounds, therefore, we are of opinion, that the evidence fails to avoid the exception in the statute of limitation, and the plaintiff is entitled to judgment.*

* See Revised Stat. c. 120, § 9.